Mr. Williams has been detained for 16 years pending a trial. It is time to let you go. His right to due process has been violated by the state of California. He has been held for 16 years without a trial on whether he should be simply convicted. When was the last time you went to the state court and asked them to have a trial? The last time I did or she did? Anybody did. He asked for a trial on November of 2012. He didn't ask for a trial. What he asked for there was that he get out. Well, November 9th of 2012, which appears in page 76 of the habeas excerpt, says that respondents request a jury trial. Well, I understand what he requests, but the bottom line of his request was, let me out. You've kept me too long. Yes, but he had been kept for 12 years. He doesn't want to have a hearing. He wants out. In other words, he has, for 17 years, fought the fact that he doesn't want a hearing. Because the bottom line is, he doesn't want to have a real test of whether he can get through this, if you will, this condition he's alleged to be in or not. And in order, if he's going to have this hearing, he's got to go have this test. And there are many defendants in California who are not wanting to have this test because it's going to kill them and they're going to stay forever. And so they don't want this test. So they come in, as he has done time and time again, and requested that his hearing be put off and his hearing be put off and his hearing be put off. And so finally, he thinks 17 years is a good year to start saying, let me out. He doesn't want to have a hearing because at the point he gets a hearing, he wants to have a test. And at the point he has a test, then he's liable to stay forever. Well, Mr. Williams is already in his 70s, so I don't understand. I understand where he is, but nonetheless, that's the bottom line of this particular case. Two points on that. Number one, the state has not shown that Mr. Williams is chargable with the bulk of the delay. Instead, much of it is. Well, let me just add a minute. That's an abuse of discretion decision, and the district court's already made that. And I can't overturn that on clear air because he has, on the majority of the time, been the one that has been the one to request that it be continued. Well, I don't think it's a question of relativity of who caused how much delay in absence. The question is how much delay is chargable in absence of the state. And here, in six and a half to seven years, it's chargable because it's unexplained in the record, and the state has offered no explanation. It seems to me that what he ought to do is he ought to go to the district judge and say, I want to have a hearing. And at that point, if he doesn't get a hearing, I'm healed. And go right along and do what it has to do under the state doctrine. Why is it that I should jump into this state proceeding, which he's a party to and which he is an accomplice to about the 17 years, and come in and say on a federal habeas act, I ought to get in now? Well, at some point, delay becomes a constitutional violation. I understand that. And the habeas act directly. Why is the elder not controlling this? Because there are no ongoing state proceedings. Yes, there are ongoing state proceedings. There's an ongoing state proceeding. Your client has been declared to this point to have to stay in this particular facility until they have a hearing. The state has had a couple of times where they've said put off the hearing. He's had more than a couple of times where he's said put off the hearing. And he doesn't go in and say, let's get to the hearing. If he goes in and says, let's get to the hearing, then you have a hearing, and we decide what happens. Well, I would point out again that in 2012, you did say, I want to go. I guess I'd have to really think about what you're saying there, because that's not what I saw. I saw he was saying, well, we ought to have had a hearing, but we didn't. And so, therefore, let me out. And the bottom line is, if he'd go in there one time and say, have a hearing. I don't want to get out. I want a hearing right now. Then the state would have to have a hearing. I don't know that that's entirely true. Well, it makes it such that the state could come in and say, they need some more time to prepare. But there is no applicable statute which then could say that the state could come in and say, we don't need to have a hearing. The point that I'm trying to make is that the record does not support the state's decision that Mr. Williams is the cause of much of this delay. And under fair error review, this court has an intended duty to look at the record and see if it supports the district court's finding. And here, the record does not support that. Now, Frank, see, I'm having a tough time seeing why the younger is not controlling. It's an ongoing case. There are no extraordinary circumstances here. There's much your client's fault of not having this hearing is the state's fault, if not more. You didn't go in and ever say, I want a hearing now. I don't want to get out because I haven't had a hearing. I want it now. And get on with it. So why under younger should I get in? Well, the key word is ongoing proceedings. Yes, there is a proceeding against him, but nothing has happened to him. Nothing has happened to him. No. It's an interior finality. Actually, under our precedent, if the state proceedings are not final and they're ongoing, what's your response to that? That's what our cases seem to say. So long as the state proceedings have not been finalized, they're ongoing. Well, though the ongoing still informs what finality means because the state surely could not just arrest somebody and keep them for 17 years. That's not what we're talking about. He's being confined and then he can challenge that confinement through the state system. So why is that not a non-final set of circumstances? Well, I think the point of finality is not to enjoin the state on proceedings. And here, nothing this Court does will enjoin the state from going against Mr. Williams in the future. Filing a new petition to our court. So you're declaring it could interfere with state proceedings? Yes, I think it would repel state proceedings. It would not interfere with them. This Court would not be saying that Mr. Williams is not a sexually violent predator. It would not be saying that he must be released forever. All this Court would be saying is that he must be released now, and then the state could come back tomorrow and issue a new petition. So it does interfere with the state proceedings if we tell the state that Mr. Timmy has to be released now, you don't see that as interfering with the state proceedings? No, when there are no ongoing proceedings. No, that's not interfering with them because the state is not doing anything currently. Or were you interfering with the state petition? Yes, you would be interfering with unconstitutional petition of Mr. Williams, but you would not be interfering in the scale proceedings against him. Well, interfering with the unconstitutional proceedings is pretty harsh. What test do I use to determine whether this is unconstitutional or not? Well, I think this Court can look to either the Matthews-Allens test or Barker. The Matthews or what? Barker versus Williams. Why would I do Barker versus Wingo? You just told me this is not a criminal proceeding, and the Barker versus Wingo is only with criminals. Yes, absolutely. And you just told me in the last case that this is not a criminal. Absolutely, but we don't have any clear civil test for. We do have a clear civil test. It's Matthews. Oh, sure, and I would urge the Court to use Matthews, but many courts are not so Matthews. Okay, so if you use Matthews, how are you going to get past this, from the Federal Deposit Insurance Corp versus Mallin, that if the state offers a reasonable justification for the delay, you lose? Absolutely, we would lose if the state had offered a reasonable justification. And what is my test that I use on whether the state used a reasonable justification? I don't think you even need a test here because the state has used a reasonable justification. What is my standard of review on that decision? Well, I think it would be clear error as to what the state court or what the district court suggested. And in this case, the district court's determination was that Williams was responsible for the majority of the delays. Well, I would say the district court said he was responsible for much of the delay. The majority, and I would look back at the opinion, but the point I think is that you have to look at the record and you have to look at what the state has said. No, we don't look at the record. We look at whether the district court's decision was clearly erroneous. So we don't examine the record independently. We just examine the district court's determination. Yes, but you have to look at the record to see if it supports the district court's decision. Do we have deference to the district court? Sure, but I would point this court to McNeely v. Flannis, which says if the record is as bare bones to this, McNeely, and in this case where the record does not support the district court's conclusion, this court does reverse the district court. And I would like to reserve a few seconds. Do we have anyone else? Yes. I'll give you a minute for a vote because I want to ask you a question that goes back to the prior case. So if you could just shift your mind back to that. I asked you whether or not Heck v. Humphrey applied, and you said no. But I thought I remembered seeing one of our cases that held to the contrary. And are you familiar with the case of Hufftown v. GGO? Yes, ma'am. Doesn't that case say that the Heck and its favorable termination rules apply to SBVA detainees who have accessed amnesty relief? It applies to those who have been committed, but whose claims have not been committed yet. I said to detainees. Detainees. So you say that that case doesn't apply solely because he has not been committed and is just being detained? Yes, and all he's looking for is forward-looking declaratory release, not a repeat of 1983 cases. So when you come back for a rebuttal, will you point me to the language in that case that says it solely applies to those who have been committed, not just those who have been detained? Ma'am, Casey Court. Becky Bruce Rice from the Attorney General's Office for Respondent. Your Honor, Respondent contends that the District Court properly abstained from this case under the Younger Doctrine, and also that the District Court's factual findings that Petitioner caused a delay in commencing his single commitment trial are not clearly erroneous in the GGO field. Petitioner clearly demonstrated by his own actions that he did not want his commitment trial. If he had truly wanted a trial, he could have requested one and had one years ago. Instead, how much delay do you attribute specifically to the defendant as supported by the record? Virtually all of it, except for two delays by the prosecution, which only attributed to two and a half months. Who are you objecting to? The defendant requested a continuance on at least five occasions in 2014, and then another occasion in 2013, three continuances. He's been there for 17 years. That basically counts for about two or three years delay based on the defendant's request for continuances. So how do you explain the state also requested a couple continuances? The court continued the case a few times on its own motion. So when we're talking about 17 years, how do you account for the other 12 or let's say 10 years that has joined and has been contained? I think he actually did request more continuances than that. But okay, well, show me the record. Why do you think that? I have listed a number of SCR signs where he specifically requested a continuance. Well, I've got a few. I've read five occasions in 2014, February 10th, May 12th, September 9th, September 29th, and November 3rd. And then in June of 2014, I think his attorney requested new evaluations by this, like, psychiatrist and so forth. I think there were also some defense requests for continuance. In the summary of the proceedings that occurred prior to 2008, I believe that is on pages 126 and 127 of the supplemental excerpts of record. But it wasn't just the continuances themselves. The defendant also filed a total of 14 state petitions between 2001 and 2014. And while those were being adjudicated by the California Court of Appeal and the California Supreme Court, it was certainly reasonable for the Superior Court not to use the state resources of convening a jury, getting the experts in there, and having the jury trial when the higher court can tell you to do something different. And I think this all is due to the fact that he had filed these habeas petitions in a different court in the jurisdiction of the lower court. No. No, it didn't. He never voted the lower court from going forward. No, he didn't. It's something up on appeal that the lower court knows his jurisdiction. No, it did not have their jurisdiction. These were habeas petitions that he was filing. But just as a matter of practicality, the Superior Court is not going to expend those resources when the higher court might tell it to do something different. And that opinion comes down, and then they've wasted all of those resources. But we're talking about somebody's liberty. And do we really do a financial sort of evaluation of whether we should be expending resources or not when we're talking about being detained? It's not just financial. I mean, it's all of those decision-making processes. This is exactly controlled by United States v. Loudhock, the U.S. Supreme Court decision, which says, having sought the aid of the judicial process and realizing the deliberateness that a court employs in reaching a decision, defendants are not now able to criticize the very process they so frequently called upon. And so Loudhock counted the defendants' delays for purposes of appeals and reports against him as far as the balance of delay goes. So if you look at what we played out in our brief starting at page 8, all of the dates of the 14 state habeas petitions that the petitioner was filing over the years. So all of those delays count against him because he was asking those higher courts for some action that was totally inconsistent with going to trial. He didn't want to go to trial. He wanted to mitigate. And I think he demonstrated that over and over. Now, another instance that shows that he was delaying, aside from just his requested continuances, was that he kept asking for probable cause hearings. He had a total of four probable cause hearings. Now, if he had really wanted to go to trial, he could have just brought those experts in and had the trial. And, for example, I think this is interesting, but the day that the superior court had the hearing on his motion to dismiss, which I agree with Judge Smith, he wasn't requesting a trial that day. He was requesting dismissal, which is different. And so the court had the hearing on the motion to dismiss. We have the transcript of that hearing. And as soon as the court denied the motion to dismiss, they had the fourth probable cause hearing. The court literally says, call your first witness for that probable cause hearing. Now, if what the defendant really wanted was a trial, he could have said, okay, I'm going to waive that repetitive probable cause hearing. The expert witness is here. Let's just convene a jury so that I can finally have my trial. But that's not what he did. He went through this probable cause hearing again for the fourth time, which was clearly inconsistent with an actual desire to go to trial. And that's why. Because, as I understand it, what happens is we have a probable cause hearing to see if he's put in this institution in the first place. And if there is probable cause that he is a sexually violent predator, that he's put in this, then it's up to him to then have the trial thereafter to determine if really he is a sexually violent predator. Correct? Essentially, yes. I mean, both sides would have to announce ready. But for the prosecution, all it is, it's a matter of getting those same two experts that testified at the probable cause hearing. Then they come in, and now they're testifying in front of a jury. And typically, it's just those two experts. Let me ask you a question. Why hasn't the state declared, we're ready, let's get this done? Well, they did that, but the defense said, we're not ready. And he went through four different attorneys, and so there was some delay built in that way, too. There were some times where the defense attorneys were saying, I've just been appointed, I need some more time to prepare for this trial. And another aspect is, the only question in an SVP commitment trial is whether the defendant is currently a danger. And so when time passes, then the experts have to go in and re-evaluate them again, because that's the only question. So there's no specific time of how much goes by so that it's no longer current. But soon after a couple of years, then the experts re-evaluate them again. Also, under the statutory scheme, is it correct that either the detainee or the state may request a hearing regarding a trial? May the state request a trial or the detainee regarding the continued detention? Yes, I think that's probably true. I don't know if that's in the statute or not, but I think that's with any trial proceeding that either side is honest. In other words, what I'm trying to find out is, is the onus on the detainee to request? Certainly, as a practical matter, it is. My final point as far as the clauses for the delay, another clause was that even after these updated evaluations were requested by the defense, the defendant himself refused to cooperate. And a couple of times, the DA actually had to go into court and get a court-ordered interview, and then the experts came out, went back to try to interview him again, and again he refused to cooperate. So obviously, that A, delays the trial, and B, is inconsistent with an actual desire to go to trial. So I think that's why the district court's factual findings were not clearly erroneous, because you have all of this evidence of the defendant playing, litigating, making frivolous motions, filling the court's dockets with all kinds of petitions and motions that's clearly inconsistent with an actual desire to go to trial. That's why it's not clearly erroneous. He also didn't even assert the right for 12 years. He never thought to say, I should have this meeting trial for 12 years into the process. Well, my worry about this is, it seems to me that before 2006, if the individual was found to be an SVP, then the court would commit him for a two-year term. Since 2006, there's been an amendment, and now this new determination is indeterminate. Right. And it seems to me that California then has a little bit of a problem, because here we have this person coming up with 17 years before anything's done. The next one, 23, 28. They're all worried about this SVP commitment being indeterminate, so they don't really get to the trial. They don't really do anything except the probable cause hearing, and then we're stuck with this. So I'm worried. Where do we go from here? Well, the new law that was enacted in 2006, which allows for an indeterminate commitment, that does have annual reviews. So it's not like the petitioner is committed and nothing happens and there's no opportunity for him to get out. There are annual reviews by the experts, and, of course, if the petitioner chooses to participate in the treatment programs, that is the key to them actually being determined that they're no longer mentally ill and in danger. So there are procedural safeguards built into the indeterminate law for a defendant to engage them. All right. Thank you, Phil. Thank you. Kelsey, you were going to enlighten me regarding the hotel case. Yes, sir. I was unable to find a specific language in response to your question. My friend on the other side is urging the court to impute a factor or a consideration that no court to this day has considered, which is whether the defendant wants to go to trial. All the defendant has to do, even under a criminal context, is assert his right, but that assertion does not require him then to completely go mute and participate in whatever the state wants to do in terms of trial. He retains all of his procedural protections and constitutional protections. And I would also like to address the argument that he filed multiple habeas petitions in state court. A review of the record shows that those have not actually delayed the trial. In the Superior Court, for example, he filed a habeas corpus petition with the California Court of Appeal on January 25, 2002. That was not denied until April. Yet in February, the Superior Court was holding a probable cause hearing. So the Superior Court was not delayed by Mr. Williams' filings in other courts. It's interesting that he's filed so many probable cause determination hearings, but he's never filed one to let's go to trial on my rights. Well, he has, absolutely. I mean, I'm not going to believe you that this happened in the movie in this latest time. It was a motion to dismiss. I read the record. She's now confirmed what I understood to be the record. Why don't we just say let's go to trial? Forget these probable cause hearings. I don't think it's his burden to do so. Oh, but no, just a minute. If we got to have both him and the state ready to go to trial, it seems to me that he ought to have at least in this record someplace saying, I'm ready to go to trial. And then say it the next month, and then the next month, and get the state on their burden and do something. That's a slightly different question, I think. If you were saying, no, I don't want to go to trial, and the state is saying that he's ready to go to trial. He's saying, no, I don't want to go to trial. If he just sits there and he doesn't do anything, that's what he is saying. Because they can't go to trial until he says he's ready. No, the state can prosecute its petition and go to the Superior Court judge and say, we're ready today. We have our psychological evaluations. Let's go to trial. And then if Mr. Williams says, no, I'm not ready. If he's delayed us another 16 years, then, of course, you can count that against him. But that's not what's happening here. But you seem to be saying that the onus is on the state, and the state seems to be saying that the onus is on the DJD. So what does the statute say about who has the onus of requesting a trial? Well, the statute just says that the court shall hold a hearing and receive procedural protections. No prior request. I don't care what it says, anything about request. So what triggers the trial? What triggers it? Well, it's the court and the state's petition to commission it. So it's their responsibility to prosecute it. Just as if a plaintiff never says they want to go to trial, they can use this for failure to prosecute their claim. In the same way, the state is responsible for progressing against states. But the problem is if the state never comes forward, the detention just becomes indefinite under statute. And it's unconstitutional at that point. The state has an affirmative duty to bring it to court, and I would direct this court's attention to the litman's decision from the California Court of Appeal on that point. He clearly says it's the state's responsibility to prosecute the petition. All right. Thank you, Counsel. Counsel, on behalf of the court, we would like to thank you for accepting this case. Pro Bono, you've done an excellent job. And we appreciate the fact that you traveled this far to argue the case. Sure. Any other questions? The case is argued. It is submitted for a decision by the court.
judges: Rawlinson, N.R. Smith, Watters